J-A07019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.F.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1449 MDA 2020 |

Appeal from the Decree Entered October 7, 2020
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  106-AD-2017

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED: MAY 11, 2021**

Appellant, L.R. ("Parent"), appeals from the October 7, 2020 Decree that involuntarily terminated Parent's parental rights to K.F.R. ("Child").[1]  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history, as gleaned from the trial court's Memorandum Opinion and the record, is as follows.  Parent has a history of mental health issues.[2]  Parent gave birth to Child in November 2011.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Parent is Child's biological mother.  Parent identifies as male and began to confirm his gender identity shortly after Child's birth.  Parent's Br. at 5 n. 2. Parent uses the pronouns he/him/his.  *Id*.

[2] Through the years, mental health providers have diagnosed Parent with Post Traumatic Stress Disorder, Mood Disorders, Anxiety Disorders, Attention

When Child was approximately 4 months old, a Community Inclusion Caseworker ("CIC") witnessed Parent hold a knife to Child's face or throat while inside Parent's home, prompting involvement from police and Dauphin County Social Services for Children and Youth ("CYS"). As a result of the incident, Parent was hospitalized for mental health treatment; Child went to live with Parent's adoptive mother, L.R., and adoptive father, J.R. ("Grandmother" and "Grandfather," respectively; collectively, "Grandparents") as part of a CYS safety plan; and CYS indicated Parent as a perpetrator of child abuse against Child.

On April 12, 2012, Grandparents filed an Emergency Custody Petition and Custody Complaint seeking temporary primary legal and physical custody of Child. On May 18, 2012, after a custody conference, Grandparents and Parent reached an agreement to grant Grandparents sole legal and primary physical custody of Child, and to grant Parent two hours of supervised physical custody each week. Parent began visiting Child in 2013.

Weekly supervised visitation between Parent and Child continued until the summer of 2017 when then-five-year-old Child refused to see Parent after an incident occurred during visitation. Specifically, in July 2017, during a visit, Parent showed Child a Power Point presentation that identified and showed

---

Deficit Hyperactivity Disorder, Conduct Disorders, Personality Disorders, and either Asperger's or Autism Spectrum Disorder. Parent engages with an outpatient therapist, a psychiatrist, and an in-home behavioral specialist. *See* Parent Ex. 1, Psychological Risk Evaluation and Bonding Assessments, at 15-18; N.T. Hearing, 3/6/20, at 136-37.

pictures of Child's biological family members, who were unknown to Child at the time, and informed Child they were her real family. Parent also told Child that Grandparents were not her real family, and that they were not blood related. Child, who was not previously aware that Parent was adopted by Grandparents, became upset and yelled at Parent. Grandparents and Parent had a heated discussion that resulted in Parent aggressively "belly bumping" Grandmother in front of Child, which further upset Child.[3]

On August 21, 2017, Grandparents filed a Petition to Involuntarily Terminate Parental Rights ("TPR Petition") to Child. On March 6 and June 15, 2020, the trial court held hearings on Grandparents' TPR Petition.[4] The court heard testimony from Grandmother; Grandfather; Laura Holahan, a parent from Child's dance school; Kim Melhorn, director at Child First Family Services; Elizabeth Beman, behavioral specialist at Focus Behavioral Health Incorporated; and Parent. Child's Guardian *ad litem*, Allison Hastings, Esq.,

---

[3] Parent has a history of aggressive behavior. In 2012, Parent bit his behavioral health specialist; the same behavioral health specialist witnessed Parent puff his chest in an aggressive way towards his fiancé; sometime between 2012 and 2017, Parent pulled a knife on a medical staff member, resulting in a ban from the facility; and in 2015 Parent pulled a knife on a pastor who was providing counseling to him. *See* Trial Court Opinion, 10/3/20, at 6.

[4] According to the trial court, "[t]here was a pending custody petition in front of the court which resulted in a delay on the termination matter." Trial Ct. Op., filed 11/30/20, at 1. We are unable to confirm this as our review is limited to the certified record in the termination proceedings.

and Child's attorney, Mindy Goodman, Esq., both advocated that the court grant Grandparents' TPR Petition. On October 7, 2020, after considering evidence and reviewing Briefs, the trial court entered a Decree terminating Parent's parental rights to Child.[5, 6]

Parent timely appealed. Both Parent and the trial court complied with Pa.R.A.P 1925.

## ISSUES RAISED ON APPEAL

Parent raises the following issues for our review:

1. Whether the trial court erred or abused its discretion by involuntarily terminating [Parent]'s parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (2)?

2. Whether the trial court erred or abused its discretion by involuntarily terminating [Parent]'s parental rights pursuant to 23 Pa.C.S. § 2511(b)?

Parent's Br. at 4 (some capitalization omitted).

## LEGAL ANALYSIS

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or

---

[5] The Decree is dated October 3, 2020, but the clerk did not give the parties written notice of the Decree until October 7, 2020. **See** Pa.O.C.R. 4.6.

[6] The court also entered a Decree terminating the parental rights of Child's biological father, who is not a party to this appeal.

abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *In re T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, while the trial court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (5), (8), and (b), we need only agree with its decision as to any one subsection

of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to 23 Pa.C.S. § 2511(a)(1)**

Parent first avers that the trial court abused its discretion when it terminated his parental rights pursuant to Section 2511(a)(1). Parent's Br. at 12. Parent argues that the record is devoid of evidence that he evidenced a settled purpose of relinquishing his parental rights to Child. *Id.* at 9. Parent contends he maintained weekly visitation, attended Child's dance recitals, attempted to file several custody petitions, sent cards to Child, and purchased gifts, clothes, and school supplies for Child. *Id*. at 9, 17, 18. Finally, Parent asserts that one month prior to Grandparents filing the TPR Petition, he "made an affirmative claim of parentage over [Child]" when he presented Child with a "photographic slide show of her biological family[.]" *Id.* at 10. Upon review, we find no abuse of discretion.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001).

Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, "the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted). Rather, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted). "However, with respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of petition." *In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citing 23 Pa.C.S. § 2511(b)).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert

- 7 -

himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted). Simply put, "adequate parenting requires **action** as well as **intent**." *In re J.W.*, 578 A.2d 952, 959 (Pa. Super. 1990) (emphasis in original).

The trial court did not conclude that Parent evidenced a settled purpose of relinquishing his parental rights under Section 2511(a)(1), rather, the court found that Parent **failed to perform parental duties** for Child for more than five years prior to the filing of the TPR Petition. Trial Ct. Op., dated 10/3/20, at 3-4. Our review of the record supports the trial court's determination that Grandparents met their burden under Section 2511(a)(1). Parent's failure to act affirmatively and utilize all available resources to regain custody of Child

over the past eight years has resulted in Child living with Grandparents, the only "parents" she has ever known, since she was four months old.

The trial court credited Grandparent's testimony about the extent of Parent's involvement in Child's life and found that Parent's efforts in visiting two hours per week, attending dance recitals, and buying some items for Child did not rise to the level of performing "parental duties." The trial court opined:

> Although [Parent] visited with [Child], [Parent]'s contact was limited to two hours of supervised visits per week. During testimony, Grandparents reported the visits were more like a play [date] rather than [Parent] creating a parent/child relationship. Grandfather further reported that [Parent] would often become verbally aggressive toward himself or Grandmother, which would then upset [Child]. [Parent] did not inquire about doctor appointments, supply sufficient clothing, or offer to help pay for food. This is supported by the testimony of both Grandmother and Grandfather who stated that [Parent] initially inquired about and attended doctor appointments but then stopped participating in medical appointments and inquiring about [Child]'s health. Both Grandmother and Grandfather testified that [Parent] provided "an outfit here or there" and school supplies, usually after school started, and did not offer to assist with food or medication when [Child] was sick. . . . [Parent] testified to sending cards and gifts on holidays and birthdays and attending [Child]'s dance recitals. This appears to be the extent of [Parent]'s attempt to connect and maintain a relationship with [Child] or perform parental duties.

*Id.* The record supports the trial court's findings.

Moreover, the trial court emphasized that Parent failed to make efforts to modify the custody Order that prevented him from seeing Child for more than two hours per week:

> While [Parent] testified to several attempts to initiate modification of the custody order and visitations, [Parent] did not pursue [his] case by paying the necessary fee or filing an application to proceed

*in forma pauperis.* [Parent] further testified to waiting on Grandparents when he approached Grandfather about changing visitations and was told that it was up to the court. This demonstrates a lack of an active and diligent effort toward [the] resumption of full parental responsibilities.

***Id.*** at 5.

We agree. The main obstacle preventing Parent from performing parental duties was the custody Order that restricted his visitation. Our review of the record reveals that Parent made minimal efforts to modify the custody Order or pursue custody of Child, falling short of the requirement that he utilize all available resources and exercise reasonable firmness to maintain a parent-child relationship. In short, Parent failed to **act**. Instead, Parent allowed Grandparents to provide Child with her physical and emotional needs for the past **eight years** while Parent attended limited weekly supervised visitation with Child.

Finally, the trial court acknowledged that Parent made some efforts after Grandparents filed the TPR Petition, including attempting to arrange for visits through Child First Family Services and saving money for Child. Trial Ct. Op., dated 10/3/20, at 4. However, the court declined to consider these efforts, explaining: "[p]ursuant to § 2511(b), the [c]ourt is not permitted to take into account the efforts by a parent subsequent to receiving notice that a termination petition has been filed." ***Id.*** We agree that Section 2511(b) precludes this evidence from consideration. 23 Pa.C.S § 2511(b).

In sum, the trial court concluded, "[Parent]'s efforts were too little and too late." Trial Ct. Op., dated 10/3/20, at 4. Our review of the record supports

- 10 -

the trial court's findings. We decline to reweigh the evidence or usurp the lower court's credibility determinations. Accordingly, we find no abuse of discretion. Moreover, because we agree with the trial court's decision as to subsection (1) of Section 2511(a), we decline to address subsection (2).[7]

**Termination Pursuant to 23 Pa.C.S. § 2511(b)**

Parent also contends that the trial court abused its discretion in terminating his parental rights pursuant to 23 Pa.C.S. § 2511(b). Parent's Br. at 21. To support his argument, Parent makes a bald averment that reunification with him is in Child's best interest. *Id.* at 11. Parent's argument fails.

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. In particular, we review whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).

---

[7] We note that Parent failed to raise a challenge to subsection (2) of Section 2511(a) in his Rule 1925(b) Statement. We also decline to address his challenge to subsection (2) because it is waived. Pa.R.A.P. 1925(b)(4)(vii).

One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, "with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent does not preclude the termination of parental rights. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. *Id.* at 898. Moreover, the trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

Instantly, the trial court made findings that Child is doing well in school, has neighborhood friends, is involved in church activities, attends dance classes, receives support through a therapist arranged by Grandparents, calls Grandparents "Mom" and "Dad," and wants to be adopted by Grandparents. Trial Ct. Op., dated 10/3/20, at 7. The trial court emphasized that the bonding assessment conducted by Dr. Shienvold stated that Child would be negatively impacted if her relationship with **Grandparents** was severed. Trial Ct. Op. at

6.  The trial court concluded that terminating Parent's parental rights to Child would be in Child's best interest, opining:

> Now eight years old, [Child] has only experienced Grandparents as her parents.  At this point [Child] expresses no desire to have contact with [Parent], although Grandparents expressed a desire to have [Parent] be part of [Child]'s life when [Child] is ready for this relationship.  There is nothing to indicate that [Child] would be harmed by terminating [Parent]'s parental rights.  Indeed, there is every indication that termination of parental rights and subsequent adoption by Grandparents would provide permanency for [Child] and would be in [Child]'s best interest.

*Id.* at 8.  Our review of the record supports the trial court's findings and, thus, we find no abuse of discretion.

## <u>CONCLUSION</u>

In conclusion, the trial court did not abuse its discretion when it found that Grandparents presented clear and convincing evidence to terminate Parent's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>05/11/2021</u>

- 13 -